Otto Krueger et al., appellants, v. Rheem Manufacturing Company et al., appellees.

No. 52349.

(Reported in 149 N.W.2d 142)

MARCH 7, 1967.

REHEARING DENIED MAY 1, 1967.

Kenline, Reynolds, Roedell & Breitbach, of Dubuque, for appellants.

O'Connor, Thomas, Wright, Hammer & Bertsch, of Dubuque, for appellees.

STUART, J.—The sole question presented here is whether our present "long arm" statute, section 617.3, Code 1966, can be applied retroactively to obtain jurisdiction over nonresident defendant corporations whose alleged tortious conduct occurred prior to the effective date of the Act.

Plaintiffs' petition alleges property damages resulting from an explosion of a liquid gas hot-water heater in Dubuque on August 23, 1962. The petition charges specific acts of negligence

and res ipsa loquitur against the nonresident defendants who manufactured the heater and its control unit. Our present "long arm" statute became effective July 4, 1963. Defendants appeared specially challenging the jurisdiction of the Iowa courts. Plaintiffs concede that defendants' business activities were not such that service could be obtained under section 496A.120 and further concede that the preceding "long arm" statute was unconstitutional for lack of proper requirement for notification to defendants. The whole case is centered on the question of the retrospective application of 617.3 as amended by the Sixtieth General Assembly. The trial court ruled the statute applied prospectively only and sustained the special appearances. Plaintiffs appealed.

I. Whether a statute operates retrospectively or prospectively is a matter of legislative intent. Within constitutional limits, the legislature may by clear and express language state its intention. Manilla Community School District v. Halverson, 251 Iowa 496, 501, 101 N.W.2d 705, 708.

Defendants argue in support of the trial court's ruling that the language of the statute evidences a clear intention on the part of the legislature for the statute to operate prospectively only, since its language expressly refers only to "happenings in the future". As this proposition, if upheld, would dispose of the case without entering into much more difficult questions, we will consider it first.

The pertinent parts of section 617.3 are: "* * * if such foreign corporation *commits* a tort in whole or in part in Iowa against a resident of Iowa, such acts *shall be deemed to be doing* business in Iowa by such foreign corporation for the purpose of service of process or original notice on such foreign corporation under this section, and, if the corporation does not have a registered agent * * * in the state of Iowa, *shall be deemed to constitute* the appointment of the secretary of state of the state of Iowa to be its true and lawful attorney upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such * * * tort. * * * the committing of the tort *shall be deemed* to be the agreement of such corporation * * * that any process or original notice so served shall

be of the same legal force and effect as if served personally upon such defendant within the state of Iowa."

█ Defendants rely on the italicized words and phrases. They argue "commits a tort" applies only to future acts and cannot be read to apply to torts already committed. They argue the legislature would have added "or has committed", if such was the intention. We cannot say the use of the present tense clearly shows an intent for prospective application only. It can be argued just as effectively that if the legislature intended prospective application only, they would have said "shall hereafter commit" a tort.

█ █ Defendants also argue that the use of "shall" and "shall be" evidences a clear intention the statute shall operate prospectively only. Supporting authorities are cited. State ex rel. Clay Equipment Corp. v. Jensen, Mo., 363 S.W.2d 666; Summers v. Skibs A/S Myken, 191 F. Supp. 929, affirmed 3 Cir., 296 F.2d 548; Cassan v. Fern, 33 N. J. Super. 96, 109 A.2d 482. "Shall" may be used to indicate future application. The suggested phrase "shall hereafter commit" is an example of such usage. It may also be used to denote compulsion. We believe the phrases are used here in the mandatory sense. At least, the language of the statute is not so clearly limited to future application that we may say it is prospective only without looking at further rules of statutory construction.

█ II. "As a rule all statutes are to be construed as prospective in operation unless the contrary is expressed or clearly implied. The rule is subject to an exception where the statute relates solely to remedies or procedure." Hill v. Electronics Corp. of America, 253 Iowa 581, 590, 113 N.W.2d 313, 318; Bascom v. District Court of Cerro Gordo County, 231 Iowa 360, 1 N.W.2d 220; Davis v. Jones, 247 Iowa 1031, 78 N.W.2d 6, 8; Schultz v. Gosselink, 260 Iowa 115, 148 N.W.2d 434.

Plaintiffs claim section 617.3 is solely procedural. Defendants argue it affects substantive rights. Both parties cite many authorities in support of their respective positions. In most instances, however, the apparent conflict is resolved when the type of service called for in the statutes is taken into consideration. Cases involving "long arm" statutes which provide for

service of notice on the defendant by personal service outside the state or by registered or certified mail have generally been held to be remedial only. McGee v. International Life Ins. Co., 355 U. S. 220, 224, 78 S. Ct. 199, 2 L. Ed.2d 223, 226, 227 ("registered mail at its principal place of business in Texas"); Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673, 676, and Sunday v. Donovan, 16 Ill. App.2d 116, 147 N.E.2d 401, 403 (personal service outside the state); Harrison v. Matthews, 235 Ark. 915, 362 S.W.2d 704, 705, and Safeway Stores, Inc. v. Shwayder Brothers, Inc., 238 Ark. 768, 384 S.W.2d 473, 475, 476 (registered or certified mail); O'Mara v. Alberto Culver Co., 6 Ohio Misc. 132, 215 N.E.2d 735 (service by registered mail); Hiersche v. Seamless Rubber Co., Ore., 225 F. Supp. 682 (personal service outside the state); Coreil v. Pearson, La., 242 F. Supp. 802 (registered or certified mail or personal service outside the state LSA-RS 13:3201); Teague v. Damascus, Wash., 183 F. Supp. 446 (personal service outside the state); Chovan v. E. I. Dupont De Nemours & Co., Mich., 217 F. Supp. 808, (not substituted service).

The decisions are based on the theory expressed in McGee v. International Life Ins. Co., supra, 2 L. Ed.2d loc. cit. 226, 227, in which the court said such statute was "remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations * * *. It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against respondent. At the same time respondent was given a reasonable time to appear and defend on the merits after being notified of the suit. Under such circumstances it had no vested right not to be sued in California."

In the same case the U. S. Supreme Court, 2 L. Ed.2d, page 225, pointed out that: "In a continuing process of evolution this Court accepted and then abandoned 'consent', 'doing business', and 'presence' as the standard for measuring the extent of state judicial power over" nonresident corporations before arriving at the "minimum contacts" concept of due process annunciated in International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057.

However, some state legislatures have not abandoned the "consent" concept in their "long arm" statutes, but have provided that by doing certain acts in the state, the nonresident consents to a state official serving as his process agent and the statutes provide for substituted service on the designated official to obtain jurisdiction of nonresident defendants. Cases involving "long arm" statutes which provide for substituted service have almost invariably held such statutes to affect substantive rights and to operate prospectively only. State ex rel. Clay Equipment Corp. v. Jensen, Mo., 363 S.W.2d 666 (Secretary of State); Gillioz v. Kincannon, 213 Ark. 1010, 214 S.W.2d 212, 214 (Secretary of State); Nevins v. Revlon Inc., 23 Conn. Sup. 314, 182 A.2d 634 (Secretary of State); Summers v. Skibs A/S Myken, 184 F. Supp. 745, 746, 191 F. Supp. 929, affirmed 3 Cir., 296 F.2d 548 (Secretary of Commonwealth); Cassan v. Fern, 33 N. J. Super. 96, 109 A.2d 482 (Director, Division of Motor Vehicles, Department of Public Safety); Johnson v. Baldwin, 214 S. C. 545, 53 S.E.2d 785 (Secretary of State). *But see:* Lone Star Motor Import, Inc. v. Citroen Cars Corp., Tex., 185 F. Supp. 48; Pugh v. Oklahoma Farm Bureau Ins. Co., La., 159 F. Supp. 155.

We have avoided citing the many cases under nonresident motorist statutes of other states. They are uniformly based upon the consent concept and uniformly have been held to apply prospectively only.

In Summers v. Skibs A/S Myken, E. D. Pa., 184 F. Supp. 745, 746, 747, the court in discussing a "long arm" statute which provided for substituted service on the secretary of the commonwealth to obtain jurisdiction over nonresident shipowners or operators said:

"The decisions that substituted service statutes partake of substantive law and are not retrospective seem uniform in result regardless of variation in statutes. * * * And no case has been found which represents a clear-cut departure from the foregoing proposition.

"The crux of the decisions which are pertinent, however, is that substituted service statutes affect substantive rights. They are thus found to be more than merely procedural. Paraboschi v.

Shaw, 1927, 258 Mass. 531, 155 N.E. 445; Restatement of Conflict of Laws, §84."

The distinction between these two types of statutes is best illustrated by the Arkansas cases which have had occasion to deal with both types of statutes. Gillioz v. Kincannon, 213 Ark. 1010, 1019, 214 S.W.2d 212, 216, 217, involved a "long arm" statute similar to ours. The court said:

"In the instant case, petitioner came into Arkansas to transact a lawful business. He remained here either in person or by agent until his work was completed. At the time of his departure, there was no law in effect here providing for an in personam judgment against him on constructive service.

"The act, supra, provided that Gillioz by performing certain acts in this state shall be deemed to have appointed the Secretary of State as his agent upon whom service might be had. The creation of this agency, which agency did not exist at the time the act was done, was not a mere 'procedural matter', but in effect contractual."

In 1962 the Arkansas Court in Harrison v. Matthews, 235 Ark. 915, 916, 917, 362 S.W.2d 704, 705, considered a new statute which did not involve constructive service. "By Act 54 of 1961 our courts are authorized to enter personal judgment against a nonresident defendant who was domiciled in this state either at the time the cause of action arose or at the time he was served with process under the act. *Service is had by sending a summons and a copy of the complaint to the nonresident defendant, by registered or certified mail.* * * * The question here is whether this new method of obtaining personal jurisdiction can be used with respect to a cause of action that arose before the act was passed." (Italics supplied.)

The court said: "Act 54 did not create new substantive rights. Whatever cause of action this appellant now has was already in being when the statute was adopted. Its only effect was to permit a plaintiff to obtain personal jurisdiction in the courts of this state over a nonresident defendant. The act is procedural in nature, merely providing in this instance a new forum for the enforcement of existing rights. Being procedural, the act applies to all cases filed after it became effective."

The defendant relied on the Gillioz case which the court said was "* * * clearly distinguishable from the case at bar. The statute in the Gillioz case gave the nonresident visitor a choice, warning him that if he engaged in business in Arkansas he thereby appointed the Secretary of State as his agent for service and subjected himself to suit here. But the nonresident was free to avoid the risk of litigation in Arkansas simply by electing not to do business in the state. Gillioz had come and gone before the statute was enacted. Obviously it could not with justice have been applied to his prior visit, for such a retrospective construction would have deprived Gillioz of any choice in the matter, attaching to his Arkansas visit a significance that it did not have when it was made." (918 of 235 Ark., 705, 706 of 362 S.W.2d.)

See also Safeway Stores, Inc. v. Shwayder Brothers, Inc., 238 Ark. 768, 384 S.W.2d 473.

The federal district court in Michigan recognized this distinction between these two lines of cases in Chovan v. E. I. DuPont De Nemours & Co., 217 F. Supp. 808, 811, saying:

"Defendant cites, in further support of its argument, cases which hold that nonresident statutes cannot be construed to apply retroactively, e. g. State ex rel. Clay Equipment Corp. v. Jensen, Supreme Court of Missouri, 363 S.W.2d 666 (1963); Cassan v. Fern, 33 N. J. Super. 96, 109 A.2d 482 (1954); Monacelli v. Grimes, 9 Terry 122, 48 Del. 122, 99 A.2d 255 (1953); Davis v. Jones, 247 Iowa 1031, 78 N.W.2d 6 (1956); contra, Tellier v. Edwards, 56 Wash.2d 652, 354 P.2d 925 (1960); Ogdon v. Gianakos, 415 Ill. 591, 114 N.E.2d 686 (1953).

"These cases may be distinguished from the instant case in that the nonresident statutes, so construed, provided that a person, upon the commission of a specified act, such as the act of a motorist entering the state, was deemed to have appointed a state official as his agent for the purpose of accepting service of process. This fictional agency relationship provided the basis for the state's jurisdiction over the nonresident. Accordingly, if the effective date of such a statute was subsequent to the motorist's entry, the statute was held not to have created a prior agency relationship which in fact did not exist.

"In the instant case, the relationship which provides the basis for the state's exercise of jurisdiction over the defendant is the relationship of claimed tort-feasor and victim which relationship existed prior to the effective date of the statute, and is independent, of the statute."

The New York Court also recognized the distinction in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N. Y.2d 443, 454, 261 N. Y. S.2d 8, 16, 209 N.E.2d 68, 73 : "Since section 302 rests not on any theory of implied consent on the part of the defendant to submit to this State's jurisdiction if he commits acts herein but, rather, on New York's inherent power to exercise jurisdiction over a nonresident defendant who has the requisite minimal contacts with it (* * *; see also, 1 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 302.04), the decisions—to which the appellants point—denying retroactive effect to statutes predicated on a theory of implied consent, such as the original nonresident motorist statutes (see, e. g., Kurland v. Chernobil, 260 N. Y. 254, 257, 183 N.E. 380; Gruber v. Wilson, 276 N. Y. 135, 140, 11 N.E.2d 568, 569), are not here in point."

As indicated in Hill v. Electronics Corp. of America, 253 Iowa 581, 588, 113 N.W.2d 313, 317, 318, and as restated in Great Atlantic & Pacific Tea Co. v. Hill-Dodge Banking Co., 255 Iowa 272, 278, 122 N.W.2d 337, 340, we approve of the broadened concept of jurisdiction over nonresidents permitted states since International Shoe Co. v. Washington, supra. We also agree the legislature could, if it so desired, enact a "long arm" statute which would be wholly procedural and could be applied retroactively without violating the Constitutions of the United States or State of Iowa. McGee v. International Life Ins. Co., supra.

However, the fact that such statute could be enacted does not aid plaintiff here. "* * * the extent to which a state chooses to exercise jurisdiction over a foreign corporation 'is a matter for the law of the state as made by its legislature.' * * * Also, 'It is a legislative, not judicial, function to extend or enlarge jurisdiction over foreign corporations.' [citing cases]." Hill v. Electronics Corp. of America, supra, loc. cit. 589 of 253

Iowa, 318 of 113 N.W.2d. See also Simonson v. International Bank, 14 N. Y.2d 281, 251 N. Y. S.2d 433, 200 N.E.2d 427, 430.

We must look to the statute which the legislature has seen fit to enact. It chose to adopt a substituted service statute. Its theory of due process is clearly based on the fiction of implied consent and goes further than most in providing "the committing of the tort shall be deemed to be the agreement of such corporation * * * that any process or original notice so served [substituted service on the secretary of state] shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa."

The wording of portions of section 617.3 is so similar to the wording of the nonresident motorist statute section 321.498 that it is fair to assume it was used as a reference, if not a model, when section 617.3 was drafted. At that time we had already decided Davis v. Jones, 247 Iowa 1031, 1037, 1038, 78 N.W.2d 6, in which we held an amendment enlarging the definition of a nonresident to include a resident who moved from the state following an accident to be prospective only. We said: "It is apparent the statute prior to the amendment herein discussed was based on the implied consent or agreement of an out-of-state motorist to name an official of this state upon whom notice could be served. No such consent was given or could have been given at the time of the accident because the defendant was not then in the class to which the statute was applicable. Hence he should not be deemed to have had such agreement." This reasoning is in accord with that expressed in cases involving similar statutes.

In Hill v. Electronics Corp. of America, 253 Iowa 581, 590, 113 N.W.2d 313, 318, we considered the retroactive application of section 617.3 as originally passed. The constitutionality of the notice was not raised. We said: "It cannot be said [section 617.3] is merely remedial or procedural. It affects substantive rights as well. It establishes a new basis for jurisdiction over a foreign corporation." The above language might indicate that any type of "long arm" statute could not operate retroactively. If so, we recede from that position and recognize that certain "long arm" statutes can be solely remedial and, if the legislature so intends, may operate retroactively.

We reaffirmed the prospective application of our particular statute in Andersen v. National Presto Industries, Inc., 257 Iowa 911, 916, 135 N.W.2d 639, 642. Retroactivity was not involved in Tice v. Wilmington Chemical Corp., 259 Iowa 27, 45, 141 N.W.2d 616, 627, 143 N.W.2d 86, but we tacitly approved of Hill v. Electronics Corp. therein.

█ For the reasons stated we hold section 617.3 operates prospectively only, and the trial court was correct in sustaining the defendants' special appearances.—Affirmed.

GARFIELD, C. J., and LARSON, THORNTON, SNELL, MOORE and MASON, JJ., concur.

RAWLINGS and BECKER, JJ., dissent.

RAWLINGS, J.—I respectfully dissent. If plaintiff had a cause of action against defendants prior to enactment of chapter 325, Laws of the Sixtieth General Assembly, then that Act simply served to accord him a new local forum. This is procedural.

And the fact that the aforesaid Act, in addition to mailing of notice, designates the Secretary of State as process agent for any in-state offending foreign corporation, simply serves to provide a double-barreled guarantee of notice.

Furthermore the agency concept employed by those authorities cited in the majority opinion, stemming from the designation of the Secretary of State as a process agent is, in my humble opinion, mere fiction. It changes the procedural aspect of the situation not one bit. To hold otherwise is to indulge, in part at least, in the additional fiction that a defendant foreign corporation would not have shipped products into the state or would not have contracted with an Iowa resident, had the legislative enactment here involved been then in existence.

There is nothing in the subject law which discloses the legislature intended it to be applied prospectively and not retrospectively.

In fact the self-evident intendment of the law is to correct an apparent evil by providing injured or damaged Iowa residents a local forum and a constitutionally adequate method by

which to effect process rather than compel them to seek redress, at additional cost and inconvenience, in some remote jurisdiction.

I would hold the Act with which we are here concerned operates both prospectively and retroactively.

In support of the foregoing see McGee v. International Life Insurance Co., 355 U. S. 220, 78 S. Ct. 199, 2 L. Ed.2d 223; International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057; United States v. Schooner Peggy, 5 U. S. 103, 109, 2 L. Ed. 49; Appleby v. Farmers State Bank of Dows, 244 Iowa 288, 293–297, 56 N.W.2d 917; Bascom v. District Court, 231 Iowa 360, 362–365, 1 N.W.2d 220; Haskel v. City of Burlington, 30 Iowa 232, 233, 234; Langdeau v. Narragansett Insurance Co., 96 R. I. 276, 191 A.2d 28, 30, 31; 49 Iowa Law Review 976, 978–982; 44 Iowa Law Review 249, 265; 82 C. J. S., Statutes, sections 416–422, pages 992–1000; 50 Am. Jur., Statutes, section 482, page 505; and 16 Am. Jur.2d, Constitutional Law, section 427, page 767.

For the reasons stated I would reverse and direct the trial court to overrule the special appearances filed by defendants.

JUSTICE BECKER joins in this dissent.